IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHNELL WALTON,

        Plaintiff,

v.                                                                       Case No.  21-2532-JWB

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/
KANSAS CITY, KANSAS,

        Defendant.

**MEMOARNDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment (Doc. 38) and Plaintiff's motion to strike reply (Doc. 44). The motions have been fully briefed and are ripe for decision. (Docs. 39, 42, 43, 45.) Plaintiff was previously employed by the Board of Public Utilities ("BPU"), an administrative agency of Defendant Unified Government of Wyandotte County. Plaintiff claims that Defendant discriminated against him by terminating his employment because of his race (black) in violation of 42 U.S.C. § 1981. (Doc. 34 at 11.) Defendant has now moved for summary judgment on Plaintiff's claim. (Doc. 38.)

After carefully reviewing the record, it is clear that there are genuine disputes of material fact as to Plaintiff's claim. While Defendant has set forth legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff's employment, including Plaintiff's violation of a COVID-19 policy restricting employees from bringing third parties to the workplace, Plaintiff has cast sufficient doubt on Defendant's justifications. Plaintiff can demonstrate pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v.*

1

*Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013). Plaintiff also may show pretext by differential treatment of similarly situated employees. *Id.* at 657–58. "[I]n this Circuit ... an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's [explanation for the alleged misconduct]." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015) (quoting *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir. 1998) (Tacha, J., concurring in part)).

Notably, Plaintiff has introduced evidence that he was not aware of the COVID-19 policy at issue (which had been posted at the facility just days before) and that he immediately left the premises upon being told about the new policy. Plaintiff was disciplined for two rule violations: allowing unauthorized personnel to access restricted areas and insubordination. (Doc. 39-9.) The first rule directly covers Plaintiff's conduct and would not result in termination on the first violation. (Doc. 42-8 at 81.) The charge of insubordination, however, has higher penalties and resulted in Plaintiff's termination on the first violation because Plaintiff was on probation at the time of the incident. Notably, the conduct memorandum identifying the circumstances of Plaintiff's rule violations merely states that Plaintiff violated the COVID-19 policy. (Doc. 39-9) ("On March 18, 2020 Mr. Johnell Walton entered the ESDC facility with children, thereby violating the limited access protocol which was instituted to provide additional safeguarding of employees brought about by the COVID-19 outbreak.")

This evidence could support a finding of pretext because Plaintiff's conduct is directly covered by a rule with a lesser penalty and there is no indication in the conduct memorandum as to the reasons for the elevated rule violation. *See Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 605 (10th Cir. 2020) (charging employee with violation of a general policy which allowed for termination was suspicious when the conduct at issue was covered under another

2

policy with minor discipline). Further, Plaintiff has introduced evidence that a white co-worker knowingly violated another COVID-19 policy pertaining to a requirement to wear a mask but was not charged with insubordination; rather, that employee was only charged with violation of a safety rule. (Doc. 39-16.) The conduct memorandum pertaining to this individual states that he had received "emails and verbal warnings issued by his direct and indirect supervisors" but disobeyed the mask requirement. (*Id.*) Based on the decisionmaker's definition of "insubordination," the white co-worker was insubordinate. (*See* Doc. 39-12, Johnson Depo. at 98:15–16) (defining insubordination as failing to do as instructed). Plaintiff has also put forth evidence that he was disciplined in early 2020 (the reason he was on probation) for a safety violation pertaining to downed power lines even though another white employee was the first individual at the scene, ultimately responsible for the call, and not disciplined. (Doc. 42-3, Plaintiff Depo. at 157:19–159:01, 159:10–11.)

This evidence viewed in a light most favorable to Plaintiff, along with other disputed facts as shown in the materials submitted on summary judgment, tends to show that Defendant's proffered explanations for Plaintiff's termination could be pretext for race discrimination. *Mann*, 819 F. App'x at 605; *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 764 (10th Cir. 2017) (discussing that differential treatment contributes to an inference of pretext). Therefore, summary judgment is not appropriate.

Defendant further argues that it is not liable under § 1981 because Plaintiff has failed to show that he was terminated pursuant to a policy of discrimination, citing to *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). (Doc. 39 at 19–20.) The evidence, however, shows that BPU General Manager William Johnson was the final policymaker as to all employment decisions for the BPU and Johnson made the decision to terminate Plaintiff's

employment based on the recommendation from human resources.  (Doc. 39 at 14–15, 17.) Therefore, Defendant can be liable for its impermissible employment decision.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Randle v. City of Aurora*, 69 F.3d 441, 450–51 (10th Cir. 1995); *see also Wulf v. City of Wichita*, 883 F.2d 842, 868 (10th Cir. 1989) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.")

Defendant's motion for summary judgment (Doc. 38) is accordingly DENIED.  Plaintiff's motion to strike Defendant's reply brief (Doc. 44) is DENIED AS MOOT.

IT IS SO ORDERED.  Dated this 12th day of June, 2023.

  s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE